UNITED STATES of America, Plaintiff,

v.

Gerald JOHNSON, Defendant.

No. 87–10054–Cr.

United States District Court,
S.D. Florida.

June 5, 1989.

Frank H. Tamen, Miami, Fla., for plaintiff.

Jeff D. Gautier, Tavernier, Fla., for defendant.

## ORDER GRANTING MOTION FOR EXPUNGEMENT

JAMES LAWRENCE KING, Chief Judge.

The court writes today to address the issue of whether expungement of a criminal record is proper in a situation where the United States Attorney has made a federal case out of a barroom brawl. After considering the arguments of counsel, the court will order the expungement of Gerald Johnson's record with respect to, this case.

On July 29, 1987, Gerald Johnson and two others entered the Tiki Bar at the Holiday Isle Resort, where David Parker worked as a "checker." Mr. Parker was also an employee of the United States Coast Guard, and was familiar with at least one of Mr. Johnson's party. Mr. Parker was not in his Coast Guard uniform this evening, and worked at the Tiki Bar in addition to his normal Coast Guard duties.

As the evening progressed, name calling between Parker and Johnson ensued and tensions mounted. Eventually, a scuffle erupted during which Gerald Johnson allegedly punched Mr. Parker in the stomach. Several people in the bar were engaged in this disturbance.

After an investigation by the Federal Bureau of Investigation, the federal grand jury in Key West, Florida, returned a one-count indictment on November 7, 1987. The indictment charged Gerald Johnson and the other members in his party, Matthew Laird and Benjamin Laird, with knowingly and willfully forcibly assaulting, opposing, and intimidating a member of the Coast Guard, on account of the performance of his official duties, in violation of Title 18, U.S.C. §§ 111, 114.

On July 27, 1988, the court conducted the trial of this case. The only evidence properly presented was that an assault of Mr. Parker occurred. The government presented no evidence to show that Mr. Johnson knew of Mr. Parker's Coast Guard status,

much less of Mr. Johnson's purported attempt to assault him because of his Coast Guard position. Accordingly, the court granted Mr. Johnson's motion for acquittal pursuant to Fed.R.Crim.P. 29(a).

Shortly thereafter, Mr. Johnson, in a letter to this court, requested that his record with respect to this incident be expunged. The court treated the letter as a motion for expungement, and ordered the United States Government to respond. The government has responded, objecting to the expungement.

A federal district court has jurisdiction to order the expungement of a record relating to a criminal proceeding before it. *See United States v. Schnitzer*, 567 F.2d 536, 538 (2nd Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). A motion for expungement is usually treated as a matter ancillary to the criminal action. *Id.* (citing authority). Moreover, ancillary jurisdiction over a motion closely related to the criminal action promotes the policy of encouraging judicial economy. *Id.*

While Congress provides that the attorney general must acquire and retain criminal identification records, *see* 28 U.S.C. § 534(a) (1982), no federal statute provides for the expungement of an arrest record. *Schnitzer*, 567 F.2d at 539. Moreover, the right to the expungement of a criminal record is not a federal constitutional right. *See Duke v. White*, 616 F.2d 955, 956 (6th Cir.1980).

Expungement lies within the equitable discretion of the district court and relief is granted only in extreme circumstances. *See United States v. Rosen*, 343 F.Supp. 804, 807 (S.D.N.Y.1972); *see also United States v. Schnitzer*, 567 F.2d 536, 539 (1977). "In determining whether such circumstances exist, courts have considered the 'delicate balancing of the equities between the right of privacy of the individual and the right of law enforcement officials to perform necessary duties.'" *Schnitzer*, 567 F.2d 539 (citing *United States v. Ro-*

*sen,* 343 F.Supp. 804, 806 (S.D.N.Y.1972)); [1] *see also Bromley v. Crisp,* 561 F.2d 1351, 1364 (10th Cir.1977).

The retention and preservation of arrest records serves the important function of promoting effective law enforcement. *Schnitzer,* 567 F.2d at 539. These records help to meet the "compelling public need for an effective and workable criminal identification procedure." *United States v. Seasholtz,* 376 F.Supp. 1288, 1290 (N.D. Okla.1974). Congress has specifically recognized the need for the acquisition preservation and exchange of identification records in 28 U.S.C. § 534(a) (1982).

The government's maintenance of arrest records may also harm citizens. The deleterious effect of arrest records on citizens has been well documented elsewhere. *See Schnitzer,* 567 F.2d 536, 539 (citing authorities). The mere maintenance of an arrest record may injure an individual's reputation, an injury that would be senseless if the individual was acquitted or never tried. *See Menard v. Mitchell,* 430 F.2d 486 (D.C. Cir.1970). Moreover, economic losses may result from lost opportunities for schooling, employment, or professional licenses. *Id.*

A reflection upon these different concerns leads to the conclusion that the power to expunge necessarily must be a narrow one. Expungement should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case. *See United States v. Linn,* 513 F.2d 925, 927 (10th Cir.) *cert. denied* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975). As one court has noted, "the judicial editing of history is likely to produce a greater harm than that sought to be corrected (through expungement)." *See Rogers v. Slaughter,* 469 F.2d 1084, 1085 (5th Cir.1972).[2]

■ Courts have considered these equities and have found that expungement is proper in five situations. The first situation is when mass arrests render judicial determination of probable cause impossible. *Schnitzer,* 567 F.2d at 540 (citing *Sullivan v. Murphy,* 478 F.2d 938 (D.C.Cir.1973)). The second circumstance is present when a court determines that the sole purpose of the arrest was to harass the defendant. *Schnitzer,* 567 F.2d at 540 (citing *United States v. McLeod,* 385 F.2d 734 (5th Cir. 1967)).[3] The third situation is where the police misused the police records to the detriment of the defendant. *Schnitzer,* 567 F.2d at 540 (citing *Wheeler v. Goodman,* 306 F.Supp. 58 (W.D.N.C.1969)). The fourth situation is where the arrest was proper but was based upon a statute later declared unconstitutional. *Schnitzer,* 567 F.2d at 540 (citing *Kowall v. United States,* 53 F.R.D. 211 (W.D.Mich.1971)). The last situation arises when the expungement of criminal records is necessary to preserve basic legal rights. *See Shipp v. Todd,* 568 F.2d 133 (9th Cir.1978) (citing *United States v. McMains,* 540 F.2d 387, 389 (8th Cir.1976)).

In determining whether this situation is analogous to the five listed above, the *Schnitzer* court cautions this court to ascertain whether the perceived harm to

---

**1.** This court, like the Fifth Circuit in *United States v. Scott,* 793 F.2d 117, 118 (5th Cir.1986), has grave doubts over whether the grant of judicial power in Article III of the Constitution extends to the relief desired by the defendant here. Article II of the Constitution confers upon the President—the holder of executive authority in our constitutional scheme—the power to grant reprieves and pardons for offenses of the United States. *See Sorrells v. United States,* 287 U.S. 435, 449, 53 S.Ct. 210, 215, 77 L.Ed. 413 (1932). Expungement can be considered a form of a reprieve or pardon. Accordingly, a good argument can lie that only the executive branch can order expungement. Nevertheless, when an expungement matter relates specifically to a criminal action over which a district court presided, the expungement matter is one that re-

lates specifically to the inherent powers and functions of a federal court. This court, therefore, believes that the expungement of records relating to a criminal proceeding before it is a proper judicial function under Article III.

**2.** For similar reasons, courts have held that the power of expungement should never be used where the validity of a conviction is never questioned. *See United States v. Scott,* 793 F.2d 117, 118 (5th Cir.1986); *see also Carter v. Hardy,* 526 F.2d 314 (5th Cir.1976); *Cavett v. Ellis,* 578 F.2d 567 (5th Cir.1978).

**3.** This expungement circumstance apparently only exists with respect to civil rights workers. *Schnitzer,* 567 F.2d at 540.

the defendant is an actuality. *Schnitzer,* 567 F.2d at 540. Before a court undertakes the drastic step of ordering expungement to protect a defendant from harm, the court must determine that the harm is real. The court must examine whether the release of the arrest records will be imminent and will result in harsh damage to the defendant. *Id.* This harshness usually results when the defendant is about to enter a profession, such as a religious or legal one. *Id.*

■ The court finds that the harm to Gerald Johnson from the maintenance of his arrest records is indeed real and substantial. Johnson was not convicted, nor was he acquitted by a jury. The court directed his acquittal. While probable cause did exist for an arrest for assault, in the court's mind no probable cause existed for an arrest for assaulting a Coast Guard official. Moreover, the filings reveal that Johnson is about ready to leave the country with his family. Before he accepts employment, a background check most likely will proceed. The negative mark resulting from this federal action necessarily will result in hardship. Accordingly, given these circumstances, the court finds the expungement of the criminal records necessary to preserve his basic legal rights. The court, therefore,

ORDERS AND ADJUDGES that the defendant's motion for expungement is GRANTED. The defendant's arrest records and all other public records relating to this case are hereby ordered EXPUNGED.

DONE and ORDERED.