618 So.2d 282 (1993)
STATE of Florida, Appellant,
v.
P.D.A. (Sealed), Appellee.
No. 91-03092.
District Court of Appeal of Florida, Second District.
April 14, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Susan D. Dunlevy, Asst. Atty. Gen., Tampa, for appellant.
P.D.A., pro se.
PER CURIAM.
The question before us is what standard or standards a court should apply in order to seal properly a defendant's "court records" or other criminal history records and the applicability of section 943.058, Florida Statutes (1991)[1] in that process.
In this appeal, the trial court ordered both appellee's court records and her other criminal history records sealed solely in reliance on the statute. The state argues that this was improper because the trial *283 court could not seal the court records without making certain findings based on constitutional principles. We find the state's argument correct. We, therefore, reverse the order insofar as it orders the court records sealed absent the proper constitutional findings. We otherwise affirm insofar as the order required the sealing of criminal history records other than "court records."
Section 943.058 distinguishes between two types of records that may be sealed: (1) Court or "judicial records"; and (2) "other criminal history records."[2] For historical and constitutional reasons, in considering a request to seal, the trial court must apply a different standard to each of the two types of record under consideration. We will consider the standard for sealing court records first.
Court records may not be sealed under section 943.058. The statute specifically excludes the sealing of court records from its application, leaving that to the discretion of the courts: "The courts of this state shall continue to have jurisdiction over their own procedures, including the keeping, sealing, expunction, or correction of judicial records containing criminal history information. The courts may order the sealing or expunction of any other criminal history record, provided ... [specific statutory requirements for sealing other criminal history records set forth]." § 943.058(2), Fla. Stat. (1991) (emphasis added).
Because the statute does not provide the means or standards to seal court records, they must be sealed in accord with a different standard. That different standard is a constitutional one. In excluding court records from the operation of the statute, the legislature tacitly acknowledged that court records traditionally have been protected by the First Amendment and are properly matters within the exclusive jurisdiction of the courts themselves. That First Amendment protection requires courts, before sealing such records, to make certain constitutional findings based on the three-part compelling interest/least restrictive means test enunciated in Press-Enterprise Co. v. Superior Court of California, Riverside County, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).[3]Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir.1989).
In the instant case, the court sealed appellee's court records without making any constitutional findings, basing the sealing solely on the requirements of section 943.058. This was error. Because court records are excluded specifically from the statute and cannot be sealed without the necessary constitutional findings, we must reverse the court's order sealing appellee's court records.
We turn next to the standard for sealing other criminal history records. Traditionally courts have found there to be a constitutional (as opposed to a public record law) right of access to those proceedings or records that are: (1) "`presumptively open,'" and (2) as to which "`public access plays a significant positive role in the functioning of the particular process in question.'" Pokaski, 868 F.2d at 502 (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569, 100 S.Ct. 2814, 2823, 65 L.Ed.2d 973, 984 (1980) and Press-Enterprise *284 prise, 478 U.S. at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 10).
In finding court records protected, the Pokaski court observed that access to court records, even future access to records of court proceedings long since terminated, implicates the First Amendment because court records historically were presumptively open and access to trials and other court proceedings promoted "`public acceptance of both the process and its results,' `awareness that society's responses to criminal conduct are underway,' [and] the `prophylactic aspects of ... community catharsis.'" Pokaski, 868 F.2d at 503 (citing Richmond Newspapers, 448 U.S. at 571, 100 S.Ct. at 2824, 65 L.Ed.2d at 985). Additionally, open trials "contribute[d] `assurance that the proceedings were conducted fairly ..., discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality.'" Pokaski, 868 F.2d at 503. Therefore, the Pokaski court concluded, the right of access to court proceedings and court records is critical to the proper functioning of the court system and cannot be circumscribed.
To summarize, public access to court records is afforded First Amendment protection because such access is steeped in historical tradition and because it implicates the First Amendment right of the press to acquire and disseminate public information in the interest of preserving our free society. Access to court records is critical to the proper operation of the courts as arbiters of disputes and dispensers of justice. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
When other criminal history records are considered in this context, it quickly becomes apparent that the ability of the public to have access to other criminal history records simply does not rise to the level of or implicate the concerns expressed in Pokaski. First, these types of records traditionally have not been "presumptively open." Although they have been made accessible to the public by the enactment of public record laws similar to chapter 119, Florida Statutes (1991), we have no historical background of allowing access to administrative or agency records concerning citizens' criminal history absent the enactment of such public record laws. In fact, some would, and have, argued that allowing public access to such records would violate their right of privacy. Finally, public access to these records would not necessarily have a significant impact on the process itself. Public access to citizens' criminal history records held by law enforcement agencies would serve no beneficial purpose in ensuring the continued well-being of our free society or in protecting and ensuring the proper operation of those governmental agencies.
For these reasons, we must conclude that the First Amendment does not guarantee access to "other criminal history records." Since, unlike court records, other criminal history records do not come clothed with constitutional protection, they may be sealed without constitutional findings. Rather, they may be sealed solely by resort to the requirements of section 943.058.
The court here did exactly that. It sealed appellee's other criminal history records solely by resort to section 943.058. No other findings were made or required. We, accordingly, must affirm that part of the order sealing appellee's other criminal history records.
In Russell v. Miami Herald Publishing Co., 570 So.2d 979 (Fla. 2d DCA 1990), we addressed the issue of what standards to apply in these types of cases. After further consideration, we now conclude that some of the language in that previous decision may lead to some confusion, and we seek now to correct any such misperception. Although, in Russell, we required the three-part compelling interest/least restrictive means test to be applied to requests to seal court records, we used language that may appear to require that test to be applied to requests to seal other criminal history records as well. We stated: "[I]n order for section 943.058 to be constitutional, the court must apply the three-pronged test which the United States Supreme Court enunciated in Press-Enterprise Company v. Superior Court of California, *285 County of Riverside, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) when considering a request for closure of court records." Russell, 570 So.2d at 982.
In Russell, while we found as we have again here that the standards for sealing records established in section 943.058 do not apply to the sealing of "court records," by stating that "in order for section 943.058 to be constitutional, the court must apply the three-pronged test," we seemingly implied that courts must consider the three-part test before ruling on a request to seal other criminal history information. As we now here more clearly have announced, that is not the case. We, therefore, adopt the following as the proper standard to be followed in sealing each of the two types of record: "Other criminal history records" may be sealed or expunged solely by following the requirements of section 943.058. The closure or expunction of those records, held by law enforcement or other governmental agencies, is not subject to any constitutional grounds of scrutiny. "Court records," on the other hand, are not subject to the standards set forth by statute, but are subject to the constitutional scrutiny established in Press-Enterprise. That test allows closure if "(1) closure serves a compelling interest; (2) there is a `substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are not alternatives to closure that would adequately protect that compelling interest." Russell, 570 So.2d at 982-83 (citing Press-Enterprise, 478 U.S. at 13, 106 S.Ct. at 2743).
We would make some final observations in regard to the sealing of "court records." We are aware that the Florida Supreme Court promulgated its own "court records" test in Bundy v. State, 455 So.2d 330 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); however, we believe that the Bundy test is merely another way of stating the compelling interest/least restrictive means test as discussed in Pokaski. The Pokaski court observed that although Press-Enterprise substituted "higher values" for "compelling interest," the Supreme Court did not intend to make the burden any less rigorous. We believe Bundy's "necessary to prevent a serious and imminent threat to the administration of justice" language is merely another version of "compelling interest."
We also are aware that the adoption of the standard announced here pertaining to the sealing of court records may result in far-reaching changes in the disposition of cases in which defendants seek to seal such records since, according to the state, criminal court records currently are sealed routinely without resort to constitutional standards. That will not be the case under the standard we have enunciated.
Additionally, while we recognize that sealing a "court record" is different from closing a "court proceeding" insofar as the latter carries with it prior restraint considerations, the cases we have reviewed do not distinguish between them as to the test to be applied. Pokaski applies the same concerns to sealing of records as it does to closure of proceedings, noting that the same interests are to be protected.
Reversed in part; affirmed in part.
LEHAN, C.J., and RYDER, DANAHY, CAMPBELL, THREADGILL and PARKER, JJ., concur.
BLUE, J., concurs in result only with opinion.
ALTENBERND, J., concurs and dissents with opinion with which SCHOONOVER, FRANK and HALL, JJ., concur.
PATTERSON, J., specially concurs with ALTENBERND, J., with opinion.
LEHAN, C.J., and BLUE, J., join in the certified question in the dissent.
BLUE, Judge, concurring in result only.
Although I agree with much of the reasoning in the dissent, I concur in the result reached by the court's opinion because the trial court made no express findings to support its order. I join in the certified question in the dissent.
*286 ALTENBERND, Judge, concurring and dissenting.
I concur in the affirmance of the trial court's order sealing "other criminal history records," but dissent from the reversal of the order sealing court records. Neither the express language of the First Amendment nor any penumbral right yet recognized by the United States Supreme Court mandates the use of the three-prong Press-Enterprise test in individualized trial court decisions to seal old criminal court records. I do not believe the trial court violated anyone's constitutional rights when it made a case-specific decision  in an open court at a public hearing  to seal a closed criminal court file after the defendant established that: 1) she had never been convicted of a crime; 2) she successfully completed a period of probation in the relevant case; 3) she had had adjudication withheld because of sworn testimony that her husband had actually committed the crimes; 4) she had lost a job and was continuing to have job-related problems due to these records; 5) she needed a job to support her child because her divorced husband had become a fugitive; and 6) she had never obtained a prior order sealing court records.
There is a substantial distinction between the right of the public to have access to pending or recently closed criminal cases, and the constitutional obligation of the courts to warehouse records and require defendants to disclose those records at all future times. Just as it is important for the public to have access to judicial proceedings to assure the propriety of those proceedings, it is important for individuals to have the ability to obtain a second chance or a fresh start when they have fully complied with a rehabilitation program for a minor offense. It is also important for defendants to have the ability under appropriate circumstances to seal criminal court records after the state has dismissed charges due to a lack of probable cause or because the evidence was illegally obtained.
Balancing the rights of the public and the individual in this area is difficult. As a matter of common law, I agree that trial courts should make decisions to seal such files cautiously at public hearings and after considering case-specific reasons to justify their discretionary decisions. As a matter of constitutional law, however, I am not convinced that the balance struck by the majority's opinion is essential.

I. THE FACTS
In November 1988, P.D.A. was charged with several counts of uttering a forged instrument and third-degree grand theft. These charges stemmed from several blank checks that had been taken from her employer's office, forged, and deposited into the joint bank account of P.D.A. and her former husband. Shortly after the state filed these charges, P.D.A.'s husband signed an affidavit admitting that he had stolen the checks when he visited his wife at work. He had forged the checks and deposited the amounts in the joint account. He had lied to his wife and told her that the extra money was an inheritance. In his opinion, she clearly had no involvement in these offenses.
P.D.A. agreed to plead nolo contendere and received a five-year term of probation which included an obligation to pay over $10,000 in restitution and perform 100 hours of community service. She fulfilled the terms of this probation in less than two years, and was discharged on February 25, 1991.
In August 1991, P.D.A. filed a petition to expunge or seal her record. An amended petition was filed alleging the appropriate conditions required for an order under section 943.058, Florida Statutes (1991), and also alleging that expunction was appropriate under the three-prong test in Russell v. Miami Herald Publishing Co., 570 So.2d 979 (Fla. 2d DCA 1990). The amended petition and an accompanying affidavit explained that she had divorced her husband and needed to support herself and her child because her former husband was a fugitive. She was employed as a certified legal assistant and had lost a job when her employer learned about the court file. She was concerned that the file would jeopardize her employment in the future. All of *287 these documents, of course, were filed in an open record to which the press and the public had access.
On September 9, 1991, a public hearing was held on this motion. P.D.A. appeared pro se and, under oath, explained her situation to the trial judge. The trial court publicly granted the petition, but made no express findings to justify its decision. The state asked that its objection be "noted," but never stated its objection.[4] The trial court then signed an expunction order that does not contain any findings similar to those in Press-Enterprise. After the order was rendered, the file was sealed and the state appealed.

II. OTHER PENDING OR RECENTLY DISMISSED APPEALS
This case is only one of many appeals which were filed in this court from orders sealing criminal court records in Hillsborough County. These appeals have not been consolidated, and recently a large number of them have been voluntarily dismissed. I describe a few of these cases only to demonstrate the breadth of the problem. Not all of these cases involve successful completion of probation on a withheld adjudication. Many involve defendants who successfully completed pretrial intervention. Occasionally, they involve cases dismissed because of an illegal search or an illegal arrest. Many involve court records substantially older than the records in this case. At least one case involves a family dispute in which it is difficult to decide who, if anyone, was the victim and who was the appropriate defendant. In that case, the family members want the order sealing the record so they can obtain financing to buy a home.
In some cases, the trial court did not believe it had any discretion to deny an order sealing records, if the requirements of section 943.058 were satisfied. See Williamson v. State, 510 So.2d 1052 (Fla. 3d DCA 1987). In others, the trial court concluded it had discretion and exercised that discretion to seal the file after testimony from the defendant. In yet other cases, the decision appears perfunctory.
The orders sealing these court files also vary in quality. Some are simply a rubberstamped "grant" upon the face of a motion. Others are carefully written orders. Interestingly, at least one order seals the documents from the public, but not from "bona fide members of the press." None of the orders contain case-specific findings under the Press-Enterprise tests.
It is obvious from even a cursory review of these files that trial judges need to know whether they have discretion, and if so, what rules regulate their discretion in this area. Rules similar to those created by the majority's opinion might be workable  they simply are not constitutionally mandated and are probably more restrictive than the rules which have been established under the common law.[5] To the extent that such rules affect criminal procedure, Florida Rule of Criminal Procedure 3.692(e) can only be modified by the Florida Supreme Court, not this court.

III. A CONSTITUTIONAL RIGHT OF ACCESS TO COURT RECORDS
The United States Constitution does not contain any express right of access to court proceedings. In Richmond Newspapers, *288 Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court was called upon to decide for the first time "whether a criminal trial itself may be closed to the public upon the unopposed request of a defendant, without any demonstration that closure is required to protect the defendant's superior right to a fair trial, or that some other overriding consideration requires closure." 448 U.S. at 564, 100 S.Ct. at 2820. After a lengthy discussion of the common law tradition supporting public trial, the Court determined that the First Amendment, in conjunction with the Fourteenth Amendment, requires public access to most trial proceedings.
In Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the Court struck down a statute that mandated closure of certain trials involving juveniles. The court again recognized that the public's right of access to criminal trials is not expressly contained in the Constitution, but rather is indirectly required in light of our extensive common law tradition of open trials. Thus, access to criminal court proceedings is one of those rights established only by the "penumbras formed by emanations" of one or more express rights. See Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510, 514 (1965).
In Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the Supreme Court extended this penumbral right to preliminary hearings. In so doing, it justified this extension not only by the tradition of open trials, but also by the important role that public access plays in the proper functioning of the judicial system. Press-Enterprise concerned an order sealing a preliminary hearing in a pending criminal case in which the defendant was charged with twelve counts of first-degree murder. The defendant was a nurse who allegedly administered massive doses of a heart drug to kill his patients. Freedom of the press and public access present substantially different issues in Press-Enterprise than in this case. I do not believe that Press-Enterprise compels the use of the three-prong test in closed, dismissed criminal cases.
The majority's opinion today extends the constitutional right of access beyond the tradition of open trials and open court-rooms to compel a defendant to make a substantial showing in order to seal a closed criminal court file of little or no interest to the public or the press. I see no tradition in the common law that compels this court to reach this result under any unwritten constitutional right.[6] So long as the hearing to consider a motion to seal is itself a public hearing, I am not convinced that public access to old criminal court records is necessary to assure the proper functioning of the criminal court system. Thus, the two reasons provided by the Supreme Court for recognizing an implicit constitutional right of access to criminal court proceedings in Press-Enterprise do not support its extension to these closed, dismissed court files.
It appears that this court is the first court to apply the three-prong test in the context of case-specific orders. Globe Newspaper Co. v. Pokaski, 868 F.2d 497 (1st Cir.1989), did not resolve this issue. Moreover, this court is not bound by the decision in Pokaski. The issue in Pokaski concerned the constitutionality of a statute that automatically sealed all criminal court records if a defendant was acquitted or the case dismissed for lack of probable cause. It did not concern an individualized decision, after public hearing, to seal the dismissed charges against a specific citizen who had no criminal record. Admittedly, dicta in that case suggests a heavy burden on a defendant to obtain a case-specific order sealing such a case. If we are to rely upon a federal case interpreting a Massachusetts statute, I am content to wait until that court confronts a person *289 similar to P.D.A. Cf. United States v. Johnson, 714 F. Supp. 522 (S.D.Fla. 1989) (federal court uses case-specific discretion to seal records of an acquittal when records would affect defendant's efforts to obtain employment).

IV. FIVE CONCERNS ADDRESSED BY EXPUNCTION ORDERS
It is important to consider this order sealing a closed court file in a broader context if we are evaluating limitations imposed by a constitution. When a person is arrested for an offense and the charge is ultimately dismissed because of successful pretrial intervention, several distinct concerns exist that may all be affected by a sealing order. These concerns deserve separate consideration because freedom of the press and the right of public access do not affect them equally. I briefly mention these issues, not to resolve them, but to demonstrate that a sealing order performs several different functions.

1. Whether the defendant may be authorized to conceal this record on job and credit applications.

Despite the majority's three-prong test for closing a court file, some branch of government may have the power to authorize a defendant to withhold information about an arrest on various applications. The press and the public would still have access to the old court file, if the court system chose to warehouse the file for the life of the defendant, but its impact on the defendant's life would be reduced. The above-stated issue, of course, is not resolved by this appeal.

2. Whether the legislature or the courts may restrict reliance upon old criminal records in making employment and credit decisions.

Again, this is not the issue on appeal and it is not directly affected by public access to court records. It is an important concern, however, in a state where "negligent hiring" is a viable cause of action. See Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986). Job-related concerns are probably the most common reason that people seek an order sealing these old criminal court records.

3. Whether the court may deny public access to closed court files.

This is the issue pending in this case. It should be noted that the majority's ruling on this issue can only be justified by freedom of the press or the implicit constitutional right of access to court records. The Sixth Amendment right to a "public" trial is personal to the defendant and is not relevant to this analysis when the defendant does not want his records to be public. Likewise, due process protects people from a deprivation of life, liberty, or property. Unless the public has a "liberty" interest in such closed, dismissed criminal court files, it plays little or no role in this analysis.

4. Whether the court may restrict the public's right to unseal a previously sealed criminal court file.

This is the difficult issue addressed in Russell. In a special concurrence to that decision, I agreed, at least as a matter of common law, that a version of the three-prong test must be proved by the press in order to open a sealed file. 570 So.2d at 983-984 (Altenbernd, J., concurring specially). Requiring the press or another member of the public to prove an entitlement to open sealed records is quite different from requiring a defendant to prove an entitlement to seal open records. Thus, equating these cases is not helpful. Normally, an order to seal is entered when the press and the public have demonstrated no particular interest in a closed file. Typically, someone seeks to unseal a file when subsequent events have made the defendant or the court file newsworthy. The two reasons justifying public access to court records in Press-Enterprise may well have greater relevance in a proceeding to unseal a file.

5. Whether a court may ever discard a closed file.

If the courts cannot seal old records without violating someone's constitutional right of access, it follows that the courts cannot discard those records without satisfying the three-prong test. If the majority's analysis is correct, the destruction of court records under Florida Rule of Judicial *290 Administration 2.075 is constitutional only to the extent that the requirements of the rule satisfy the Press-Enterprise test. Even if the drafters of the constitution had foreseen computer technology, I doubt they would have inserted this emanation of a penumbra into the constitution.

V. SECTION 943.058, FLORIDA STATUTES (1991), IS A CONSTITUTIONAL STANDARD AUTHORIZING CASE-SPECIFIC ORDERS SEALING COURT RECORDS
Assuming that the three-prong test did apply in this context, I still believe that the framework provided in section 943.058, Florida Statutes (1991), is constitutionally adequate to support an order sealing the file at issue in this case. The majority opinion states: "Since the statute does not provide the means or standards to seal court records, they must be sealed in accord with a different standard." I do not understand why this is necessarily so.
To obtain an order sealing other criminal history records, a defendant must show that he or she: 1) has never been previously adjudicated guilty of a crime; 2) was not adjudicated guilty of any offense stemming from this arrest or alleged criminal activity; and 3) has not received a prior similar order. § 943.058, Fla. Stat. (1991).[7] Although the wording of these statutory requirements is not identical to the three-prong test, it is sufficient to satisfy that test.
A person has a "compelling interest" to seal an old criminal court file because it is, or fairly is perceived to be, an ancient monkey on the person's back in social and business settings. Especially a dismissed charge, a false arrest, or an unconstitutional search implicates the defendant's privacy. See City of Pepper Pike v. Doe, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981). The defendant's interest in closure is even more compelling when that person otherwise has a clean record. The strength of the defendant's interest should be balanced against the public's interest in retaining these old files. See Johnson, 714 F. Supp. at 524. What public need is served by requiring courts to warehouse records of such cases for long periods?
Unless the file is truly sealed, there is a "substantial probability" the defendant's interest will be harmed. The defendant cannot assure its nondisclosure. Especially in the age of computers, it is difficult to conceal records from the public unless they are sealed. If peace of mind concerning such a file is a legitimate interest, it can only be achieved by a sealing order. For example, must a middle-aged person with a clean record make an extraordinary showing in order to have the constitutional ability to seal a dismissed charge for underage possession of alcohol, when the charge was dismissed following successful completion of a community service project?
Less restrictive alternatives to case-specific closure are limited. Even if authorized by law, a person may not feel comfortable or honest in denying the existence of an old criminal file that is still a public record subject to retrieval by a simple computer search. A trial judge has no jurisdiction over third parties who may unfairly rely on such records. Even the Pokaski court suggested that an individualized hearing in a public courtroom is an adequate less restrictive means to allow the sealing of records. 868 F.2d at 507.
I cannot conclude that the trial court violated anyone's First Amendment rights by using its discretion to grant P.D.A.'s motion to seal this court file on the same evidence and using the same tests that are sufficient to seal other old public records. Cf. State v. Pena, 593 So.2d 282 (Fla. 4th DCA 1992) (en banc decision holding that court is within its discretion in sealing its own records under section 943.058, and citing to Russell). There may be a valid judicial reason to employ another, more restrictive test for such court records, but I am not convinced that another test is constitutionally essential or that the state adequately *291 presented the trial court with any viable alternative test in this case.

VI. A CERTIFIED QUESTION
Because the majority opinion affects Florida Rule of Criminal Procedure 3.692(e) and addresses an important constitutional issue, in order to assure jurisdiction in the Florida Supreme Court, I would certify the following question:
WHETHER THE PRESS-ENTERPRISE TEST GOVERNS A MOTION TO SEAL CRIMINAL COURT RECORDS IN A CASE IN WHICH ADJUDICATION WAS WITHHELD, THE DEFENDANT SUCCESSFULLY COMPLETED PROBATION, AND HAS OTHERWISE SATISFIED THE REQUIREMENTS OF SECTION 943.058, FLORIDA STATUTES (1991).
PATTERSON, Judge, specially concurring.
I concur with Judge Altenbernd because I believe his approach provides adequate protection to the press and public without imposing a substantial additional work load on trial courts that are straining to maintain current dockets. I question, however, whether his position can survive the adoption of section 24 of article I of the Florida Constitution (Access to Public Records and Meetings, effective July 1, 1993) and the corresponding enactment of rule 2.051, Florida Rules of Judicial Administration.[8] I endorse the certified question which he proposes.
NOTES
[1] Although section 943.058 has been repealed and replaced (chapter 92-73, Laws of Fla.), the new provisions do not address the problem considered here. Neither do they change our analysis, except, perhaps, to strengthen it.
[2] Although the 1991 statute offers no definition, we believe that "other criminal history records" may be loosely defined as an individual's criminal history information that is held by a state attorney, police department, sheriff, or the Florida Department of Law Enforcement or other similar criminal justice agency. The 1992 statute defines "criminal history record" as "any nonjudicial record maintained by a criminal justice agency containing criminal history information." § 943.045(18), Fla. Stat. (Supp. 1992). We note parenthetically that although the statute defines "criminal history information" as information collected by criminal justice agencies, including courts, see § 943.045(3), Fla. Stat. (Supp. 1992), we believe that the constitutional analysis we apply here precludes a literal application of that definition.
[3] The Press-Enterprise test provides that closure may be ordered if "(1) closure serves a compelling interest; (2) there is a `substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are not alternatives to closure that would adequately protect that compelling interest." Russell v. Miami Herald Publishing Co., 570 So.2d 979, 982-83 (Fla. 2d DCA 1990) (citing Press-Enterprise, 478 U.S. at 14-15, 106 S.Ct. at 2743).
[4] In fairness to the assistant state attorney, it appears that the trial court was hearing several expunctions in sequence. The assistant state attorney had just finished arguing these same issues in another expunction case. Coincidentally, the preceding expunction case, State v. R.P.H., No. 91-03091, is also pending on appeal. In that case, Judge Ward sealed a ten-year-old criminal court file in which the state had dismissed gambling charges relating to an unlicensed game of bingo. The defendant had successfully completed pretrial intervention. The state argued that the defendant's job-related concerns were not a "compelling interest" to justify a sealing order. Presumably, the assistant state attorney in P.D.A.'s case intended to make the same argument.
[5] I note that the federal courts and the courts of other states have established common law guidelines to regulate the trial courts' inherent, discretionary powers in this area. See United States v. Johnson, 714 F. Supp. 522 (S.D.Fla. 1989); City of Pepper Pike v. Doe, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981); State v. C.A., 304 N.W.2d 353 (Minn. 1981).
[6] Just as public trial has a long tradition, the policy of giving people a second chance by sealing court files is not a novel idea. See, e.g., Johnson v. State, 336 So.2d 93 (Fla. 1976) (courts have used discretion to seal their records from public view "from time immemorial"). It is well-established that courts have inherent, equitable power to use their discretion to expunge criminal court records in appropriate cases. 24 C.J.S. Criminal Law §§ 1735-36 (1989).
[7] See section 943.058(2)(d), Florida Statutes (1991), for an additional requirement not relevant to this case.
[8] In Re Amendments to Fla. Rules of Judicial Admin.  Public Access to Judicial Records, 608 So.2d 472 (Fla. 1992).